CHRYSLER CORPORATION, and
Chrysler Motors Corporation,
Plaintiffs,

v.

Vincent L. TOFANY, Commissioner New
York Department of Motor Vehicles, Albany, New York and William E. Kirwan,
Superintendent New York State Police,
Defendants.

Civ. A. No. 68–CV–359.

United States District Court
N. D. New York.

Mar. 13, 1969.

Kelley, Drye, Newhall, Maginnes & Warren, New York City, Sellers, Conner & Cuneo, Washington, D. C., for plaintiffs; Robert L. Ackerly, Washington, D. C., Francis S. Bensel, New York City, Whalen, McNamee, Creble & Nichols, Earl H. Gallup, Jr., Albany, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen., State of New York, Albany, N. Y., for defendants; Douglas S. Dales, Donald C. Glenn, Asst. Attys. Gen., of counsel.

Wilmer, Cutler & Pickering, Washington, D. C., for Automobile Manufacturing Ass'n, Inc., amici curiae; Carter & Conboy, James S. Carter, Albany, N. Y., of counsel.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Robert N. Ford, Attorney, Department of Justice, Dowell H. Anders, Acting Chief Counsel, Robert M. O'Mahoney, Assistant Chief Counsel, Federal Highway Administration Department of Transportation, for the United States, amici curiae; Justin J. Mahoney, U. S. Atty., Northern District of New York, Albany, N. Y., of counsel.

## MEMORANDUM-DECISION and ORDER

JAMES T. FOLEY, District Judge.

This action for declaratory judgment and ancillary injunctive relief presents important questions of statutory interpretation of a particular provision of the National Traffic and Motor Vehicle Safety Act of 1966, P.L. 89–563; 15 U.S.C. §§ 1381, 1391 et seq. (Supp. II,

1967), and in this instance particular portions of a Motor Vehicle Safety Standard issued and promulgated thereunder. (Motor Vehicle Safety Standard No. 108, S1, S3.1.2, 23 C.F.R. 255.21). The primary issue is the extent that the provision of the Act, ostensibly intended from its terms by Congress to be one of preemption at least in some respect should affect the situation involved in this litigation. (See 15 U.S.C. § 1392 (d), Supp. II, 1966).

This historic federal Act, enacted after lengthy hearings and reports in the Congress, gives a simple declaration of purpose " * * * to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." (15 U.S.C. § 1381). The ever-increasing toll of maiming and death upon our highways has been for a long time a problem of grave national concern. Every layman—not only litigants, lawyers and judges who are involved first-hand—is conscious from the daily papers of injury and deaths caused by automobile collisions that occur every minute of every day throughout the nation. The Congress necessarily was compelled by nationwide concern to do something legislatively about the problem. Thereby came into existence this new national legislation that I think should be acclaimed by all and given full support and cooperation to attain the laudatory purpose above expressed.

There has been in this District Court preliminary proceedings to this decision that should be noted. After hearing the plaintiff and defense lawyers in Chambers in Albany after the filing of the complaint, on October 21, 1968 I signed and entered a temporary restraining order enjoining the defendants from interfering with the sale of plaintiffs' certain Dodge models that have the optional equipment Super Lite as an additional forward head lamp. In the usual course of legal procedures in these injunctive requests, a hearing was held later on the preliminary injunction motion of plaintiffs and the record of that hearing and the exhibits offered and received are on file and unnecessary to detail here.

By memorandum-decision and order of December 26, 1968, the motion for preliminary injunction was granted, and it should be noted that the plaintiffs' counsel voluntarily consented not to ship to their New York dealers any further Dodge models with Super Lite thereon pending final decision on the merits. In the December 26th memorandum and motion of the defendants to dismiss the complaint for lack of jurisdiction, lack of standing and failure to state a claim was denied. In such memorandum also there is described sufficiently the lighting purposes of Super Lite as an intermediate beam of front light held forth by the plaintiffs as a safety feature and described by their expert lighting engineers in detail at the preliminary injunction hearing, and the contrary assessment proffered for the named New York Commissioner and Superintendent as dangerous to safe operation of motor vehicles under certain road conditions at night.

Commissioner Tofany and Superintendent Kirwan are each described in the complaint as being sued in his official and representative capacity. To my knowledge, both of these New York officials have discharged the duties of their high and important State positions not only with competence and distinction but with a dedicated interest in experimentation, adoption and enforcement of progressive measures to reduce accidents and their dreadful toll in New York. Their actions in regard to the Dodge models equipped with Super Lite are described in Paragraph 6 of the complaint. Their attitude and conduct played a major part for institution of the suit here by Chrysler. Such conduct, I am confident, is in good faith and in accord with legal advice given and followed solely by these officials for New York's interests.

In the answer filed for them after the denial of the motion to dismiss there is a little hedging. It is only ad-

mitted that Commissioner Tofany advised the plaintiffs that the Dodge models equipped with Super Lite do not comply with the New York State Motor Vehicle Code, but further allegations in the complaint in Paragraph 6 of threatened prosecution of Chrysler dealers who sell Dodge cars equipped with Super Lite and the issuance of traffic summonses by New York State Police under the direction of Superintendent Kirwan to motorists driving autos so equipped are denied. In my judgment, from the attitudes of the parties observed at Chamber conferences and court hearings, and also in view of the motion for summary judgment filed by defendants and the cross-motion for summary judgment by plaintiffs, there are, despite formal denials, no genuine issues of material fact remaining. Further, under all the circumstances, there is undisputably a justiciable, substantial controversy of sufficient immediacy and reality to warrant, if proper, the issuance of the declaratory judgment sought. (Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826).

Similar actions to this one were instituted by Chrysler in the United States District Court for New Hampshire and the District Court for Vermont, where unwelcome reception was given to Super Lite. In these District Courts the judges reached entirely different conclusions. District Judge Bownes of New Hampshire on December 5, 1968 granted judgment for state officials acting in similar capacity as the defendants here and dismissed the Chrysler complaint. District Judge Leddy, in a memorandum-decision dated December 26, 1968, to the contrary, enjoined the Motor Vehicle State Commissioners of Vermont from interfering with the sale and distribution of motor vehicles equipped with "Super Lite". So, instead of being the beneficiary of previous judicial research, reasoning and conclusion in accord, there is conflict, and a choice must be made. After careful review on my own of the legislative history, intent and purposes

of the Act, I am inclined to follow the reasoning and conclusion of Judge Leddy. The evidentiary hearing record made before me is practically the same as that made before him. A notice of appeal has been filed from both decisions:—the New Hampshire decision to the Court of Appeals, First Circuit, and the decision of Judge Leddy to the Court of Appeals, Second Circuit, that covers New York federal District Court rulings as well as Vermont. One might be tempted to withhold decision here to await the appellate ruling in this Circuit that will be the law for the District Courts of this Circuit, unless the Supreme Court intervenes. However, inasmuch as there is extensive and intensive briefing and dispute particularly between the plaintiffs and the government as amicus curiae, thoughts on my part, even if not persuasive in the appellate realm and later held erroneous, should be set forth, despite the pending review of practically the same problem from Vermont.

First, I do not intend to set forth in haec verba herein the statutory provision and standard involved and in issue. Two judges have done that. In my judgment, also, the legislative history step by step is as thoroughly canvassed in Judge Leddy's opinion as it can be. There can be no question that Section 103(d) of the Act, 15 U.S.C. § 1392(d) plainly by its terms confers a federal preemption of some kind, whether it be construed as a narrow or a broad one ultimately. Congress may determine how far its regulations can go. (Kelly v. Washington, 302 U.S. 1, 10, 58 S.Ct. 87, 82 L.Ed. 3). There is also no question—and in fact it is conceded by the government—that the language of Section 375 of the New York Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, portions with elaborate requirements and procedures for approval of headlamp equipment in New York, is not identical to the language expressing the federal standard in regard to auxiliary lamps. (Safety Standard No. 108, S3.1.2).

The "same aspect of performance" phrase of the admitted preemption pro-

vision and its interpretation and application is the difficult problem. This phrase forms the core of the dispute in the other two States, and does here in the application of the federal standard to the New York statute. It is recognized that the phrase must be accorded critical weight to fathom congressional intent. The prime importance attached to these four words seems proper and necessary inasmuch as they must be considered in the context of a federal statute that specifically aims at formulation of federal motor vehicle safety standards as minimum ones for motor vehicle equipment performance that is practicable and meets the needs for motor vehicle safety. (15 U.S.C. § 1392(a), (Supp. II, 1967)). Important legislative expression emphasizes that regulations or standards established must be directed to performance, not equipment and other concepts of design. (See Sen. Rep.No.1301, 89th Cong. 2d Sess., 1966, at 6; Conf.Rep.No.1919, 89th Cong. 2d Sess., 1966) U.S.Code Cong. & Admin. News, p. 2709.

■ The phraseology is hard to grasp with clarity and apply with practicality to concrete situations, but the sense and the general wording of federal safety standard No. 108, with the specific reference to auxiliary lamps, support, I believe, the opinion of Judge Leddy in this respect that Super Lite, an added front lamp, must come within this federal standard regulation even though the standard is general and contains a somewhat vague specific prohibition against lamps that might impair effective performance for forward lighting. The standard, I believe, imprecise as it may be in some respects, encompasses lighting equipment such as Super Lite. To follow the overall sense and scheme of the legislation and to avoid confusion easy to envision by dissimilar state and federal standards in instances like this, it seems evident the Congress wanted primary responsibility to be a federal one during the first purchase stage, and at the outset of the introduction of the new automobile into the national stream of commerce.

It is highly significant, as plaintiffs urge, that it was declared in the Senate Report that the primary responsibility for regulating the national automotive industry must fall squarely on the Federal Government with a consultative role of importance, to be accorded to the States, of course, in the setting of standards. (S.Rept.No.1301, 89th Cong. 2d Sess., (1966), at page 4). I agree that this declaration of federal dominance with State standard authority permitted only to the States when identical to the federal one dilutes the government argument in the amicus briefing that the evaluation of the preemption section from original Bill to final Act indicates Congress narrowed the preemptive effect of the Act at each stage of legislative process to warrant conclusion that the federal standard must be considered subordinate to the State statutory requirements. Narrowed preemption still means some preemption if the existing circumstances in a particular situation by fair interpretation necessitate its application.

I agree with Judge Leddy that even if the preemption section is viewed as limited, it, and the standard issued under it, must still be broadly construed to effect the apparent general federal purpose. It does seem from a reading of the Act as a whole that the Federal Government was to assume a dominant role in the field of performance standards for new motor vehicles, with the States retaining their traditional role in regard to used motor vehicles particularly with respect to their operation and the condition of vehicles and their equipment. (15 U.S.C. § 1393, 1396 (Supp. II, 1966); S.Rep.No.1301, 89th Cong. 2d Sess., 4 (1966)). I find no support to make acceptable the government contention that inasmuch as there is no provision in the Act for federal approval of new equipment, then the States are the only bodies in a position to regulate it. This contention begs the question, in my judg-

ment, because in it must be the assumption that the equipment is not governed by a federal standard which is really the basic finding here, namely, that Safety Standard No. 108 does so govern this particular auxiliary lighting equipment.

It should be emphasized that there should be no fear that there may be a gap caused or "No Man's Land" existent inimical to the interests of safety by the rulings that federal preemption exists in regard to this particular equipment placed upon new cars at the manufacturer or distributor level. Under the Act the Secretary has explicit authority to insure compliance with the federal safety standards promulgated. There are detailed statutory powers in the Act for federal employees to enter and inspect the factories, warehouses and manufacturing establishments of motor vehicles for reasonable inspection of their operations and records. (15 U.S.C. §§ 1400, 1402(c), (e); Supp. II, 1967). Appropriate powers are conferred upon the Secretary and the District Courts to enforce the established standards and insure compliance with them. (15 U.S.C. § 1397(b) (1), 1398, 1399, 1400).

The contentions for the State that Standard No. 108 in issue is not practicable, not stated objectively, extremely subjective and couched in negative language, in my opinion, should make available ripe subjects for the State in its consultative role to present as it properly can under the Act to the Secretary or Director of Transportation. I refrain also from judicial attempt to define the "same aspect of performance" phrase other than to hold that Standard No. 108 by reference to auxiliary headlamps places Super Lite and the questions of its adequacy or impairment of effectiveness of the lighting equipment in the federal domain, there to be evaluated for its deficiencies by the United States Department of Transportation in accord with the Act. Fundamentally, my concurrence and joinder with the reasoning and conclusion of Judge Leddy is that in my judgment such approach of broad interpretation, I think, is the only way the

federal regulatory standards, when issued after completion of due administrative, deliberative and consultative processes, can work. The office of the Judge in construction of this kind is to add force and life to the cure and the remedy, according to the true intent of the makers pro bono publico. (Heydon's Case, 3 Co.Rep. 72, 76 Eng.Repr. 637 (1584).

The cross-motion of plaintiff for summary judgment is granted. Judgment for the relief prayed for in the complaint shall enter in its favor and against the defendants. I shall sign as of the date of this decision and file herewith with the Clerk the Order submitted by the attorneys for the plaintiffs that is in judgment form and that I accept as in conformance with the reasoning and conclusions of this decision and hereby made part of it. The motion filed by the plaintiffs to strike portions of the United States amicus curiae brief and exhibits attached thereto is denied.

It is so ordered.